## NULOMOLINE CO. v. STROMEYER.

(District Court, E. D. Pennsylvania.    September 14, 1917.)

### No. 1669.

INJUNCTION ⬤�longrightarrow56—TRADE SECRETS—EVIDENCE OF USE.

Defendant will not be enjoined from selling sugar as made by him, and from selling to persons in the trade, because a former employé of plaintiff disclosed its process of sugar making to defendant, and sent him the names of customers of plaintiff, and as a broker sold defendant's sugars to former customers of plaintiff; there being nothing beyond the fact that he disclosed the information to implicate defendant in either its disclosure or its use.

In Equity. Suit by the Nulomoline Company against Julius Stromeyer. Trial hearing on bill, answer, and proofs. Bill dismissed.

See, also, 240 Fed. 228.

Leo Levy, of New York City, and Chester N. Farr, Jr., of Philadelphia, Pa., for plaintiff.

P. H. Granger and Michael J. Ryan, both of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. There are cases in which the principles we are asked to apply by the respective parties to the controversy are each in line with the appeal which our sense of justice makes to us, and yet the mind does not rest with satisfactory clearness upon the finding that either principle has application. The added difficulty is sometimes present of reconciling the conclusion to which our minds incline with the accepted principles of the administration of the law. The controversy with which we are now concerned presents features which suggest the kind of case above indicated. The plaintiff asks for a finding that the defendant conspired with a discharged employé of the plaintiff to have the employé disclose to the defendant the customers of the plaintiff, together with the kind of manufactured product which the plaintiff had for years been supplying to these customers,

and also information of plaintiff's secret processes of manufacture, to the end that this trade might be diverted from the plaintiff to the defendant.

Trade competition of this character, based upon these methods, is complained of as unfair, inequitable, and a legal wrong to the plaintiff, justifying the court in awarding the preventive remedy of an injunction. The defendant, on the other hand, views the effort of the plaintiff as one, under the guise of enjoining the employé from violating a confidence reposed in him, of asking the court to enjoin the defendant from using processes of manufacture which he had employed long before the plaintiff engaged in the business. The legal principle which each party invokes is clear enough, even without the decided cases which support it. Macbeth v. Schnelbach, 239 Pa. 76, 86 Atl. 688; Park v. Hartman, 153 Fed. 24, 82 C. C. A. 158, 12 L. R. A. (N. S.) 135; Du Pont Powder Co. v. Masland, 244 U. S. 100, 37 Sup. Ct. 575, 61 L. Ed. 1016.

It is thus made evident that the controversy here is wholly one over the facts. It must be admitted that the conduct of the employé, coupled with statements, oral and written, emanating from him, give ample room for the stanch from which plaintiff expects to reach the conclusion in its favor. It is fortified in this expectation by the finding of the court having jurisdiction of the employé in an action to which he was a party that he had been guilty of the acts of which the plaintiff complains. The finding thus made, however, in no sense invites, much less justifies, the further finding that the present defendant was a participant in the wrongs thus disclosed and condemned. No suspicion entertained by the plaintiff of defendant's guilt, however well based, nor even a well-founded belief following its own investigation into the facts, will move the court to a judgment in its favor. The truth of the charge may not only be believed by the plaintiff, but the convicting facts may be known to it. None the less the judgment of the court must proceed only upon facts established by legal evidence. This is what may be termed the artificial side of the finding. As already stated, there has been an inquiry into the facts and a legal judgment of the conduct of the employé reached. In the course of this inquiry statements, some of them under the sanction of an oath, were made by the employé, and letters were written by him. He thus made evidence against himself which would inflame a suspicion already entertained by the employer, and there would naturally be given such credence to the admissions of the employé as would inculpate the defendant, with whom, along with others, the employé was charged with having conspired. It is clear, however, that proof that such statements had been made by the employé, even if made under oath, would as against the defendant be evidence of nothing, except that the employé had made the statements, and this fact might not be, and ordinarily would not be, of any relevancy in an inquiry aimed at the defendant.

The difficulty which confronted the very capable counsel for plaintiff in their efforts to develop the facts as they wished them to be found was this: They had within their reach very little, if any, evidence of the doing of the acts by the defendant of which their clients complain-

ed, other than the disclosures above mentioned to have been made by the employé. It was an easy matter for them to prove that the employé had made admissions which inculpated the defendant. They were not to be criticized for anticipating that the employé, if called as a witness and interrogated directly as to the facts, might not testify in line with his former statements, but might qualify or explain them away. The burden was upon the plaintiff to establish the facts by affirmative evidence, and counsel were in consequence under the necessity of calling the employé as their own witness. The wisdom of the trial strategy of avoiding the direct inquiry, but asking first whether the employé had not made the admissions embodying the facts sought to be proved, and then inquiring whether the statements were not true, was, of course, obvious. Ordinarily, such a method of conducting the examination of a witness would not be tolerated. Inasmuch, however, as the complaint against the defendant necessarily involved the charge of a conspiracy between him and the witness, counsel for plaintiff were permitted, after first laying ground for such a course of examination, by showing the interests of the witness to be adverse to those of the plaintiff, and his attitude to be one of hostility, to ask questions in a form which would otherwise have been objectionable as leading. The door was opened to them to the full width, and they were given the widest latitude in this respect. The required accompaniment of such a ruling, however, is that the trier of facts, to be found from such testimony, should exercise the closest scrutiny to distinguish between proof of the fact that the witness had made such prior statements and his sworn testimony in the present trial of what the real facts were. Observing this distinction, and taking into consideration all the evidence in the case, there are certain conclusions therefrom which stand out with satisfactory clearness, and other facts which are so obscured, if not lost, in a maze of mere suspicions and accusations and probabilities, not arising out of legal evidence, as that a finding of the facts must be refused.

The defendant and the plaintiff were each manufacturers of invert sugars. The defendant was in the business long before the plaintiff engaged in it. That the defendant had the widest experience and fullest knowledge of how invert sugars were made is established, not only by the evidence, but by the confirmation which this evidence received from the fact that the plaintiff, when it first engaged in the business, called upon the friendly aid of the defendant to straighten out and make efficient the work of the plaintiff's plant. The witness Tausek was in the employ of the plaintiff. As such employé he came to know who were the customers of the plaintiff, and acquired also a knowledge of their special needs, and the means adopted by the plaintiff to meet the wishes and demands of its customers. Tausek had entered into a contract with the plaintiff, by which he bound himself not to divulge any information received in the course of his employment of a confidential nature. Something of a controversy has been raised between the employer and employé over some phrases which are now in the written contract. This controversy is of small moment, for the obligation not to disclose rested upon the employé, whether he

had formally so agreed or not. A disagreement between employer and employé arose, in consequence of which their relations as such terminated in the discharge of the employé. This discharge was resented by the employé as an injustice to him, the natural sequel of which was that he has since nursed a feeling of resentment. He sought, as was, of course, his right, employment elsewhere, and, as was to be expected, drifted into that line of business with which he was familiar. This brought him, to some extent, at least, into competition with his former employer.

The essentials of the complaint brought by the plaintiff are these: One is that the plaintiff, in the development of its business, had found processes of manufacture which it thought to be peculiar to itself and claimed to be its own. It charges that the defendant has conspired with its employé to have this process disclosed to him, so that he might profit to the disadvantage of the plaintiff. Such a disclosure the plaintiff asserts would be a wrong to it, and asks to have the disclosure enjoined by the prohibitive process of the court. The other complaint is one of what is substantially unfair competition. It is involved in the further charge that the employé, having knowledge, confidentially imparted, of the customers of the plaintiff, of the special needs of these customers, and of how the plaintiff had supplied these needs, disclosed this confidential information to the defendant, in order that the defendant might be enabled to imitate the product of the plaintiff and offer it to the plaintiff's customers as the same product they had been receiving, and thus divert the trade of such customers from the plaintiff to the defendant. With whatever may be the merits of the dispute between the plaintiff and its former employé, we are not now concerned, except to the extent to which it involves the defendant. That an employé who is worthy of his employment will through the experience gained acquire knowledge and add to his skill is to be expected, and in this acquisition he should not be discouraged. He further cannot be refused the right to make use of all the skill and ability he may possess. He has no right, however, to abuse the confidence reposed in him, nor to take with him the property of his former employer. The line dividing that which belongs to him and that the right to which is still retained by the employer is a line sometimes hard to draw, and doubly hard for an employé to draw when the vision is obscured by a sense of wrong suffered. That Tausek, the former employé of the plaintiff, was not at all times either careful in drawing this line, or even disposed to draw it, could easily be found from the evidence which he has made against himself, and, as already stated, has in fact been found, partly upon this evidence, in the case against him in which his statements were legal evidence. We do not, however, feel justified in making the further finding that the defendant was a party to the doing of any wrong to the plaintiff. Proof that Tausek was both willing to disclose the processes which the plaintiff believed to be secret processes of its own, and did in fact disclose them to the defendant, does not necessarily satisfy us that the defendant availed himself of the information thus imparted, or that in fact anything was thereby imparted which had not previously been known to the defendant.

The record of the evidence is too bulky for review, but its careful consideration has impressed us of the truth of two general observations which obtrude themselves. One is, as already several times remarked, that the plaintiff was moved to institute this action by disclosures made in the litigation with its employé which unavoidably raised a suspicion that all who dealt with him so dealt with a guilty purpose. The other is that the real motive for the disclosures, so far as made to the defendant, were made in the effort of the employé to show himself to be of value to his new employer, and played no real part in their relations. That the suspicions entertained, however excusable, or even apparently justified, were not all well based, is shown by the unfounded charge that plaintiff's former employé and the defendant were brought together covertly and in a way to indicate a guilty purpose. The testimony of the witness E. B. Waldron wholly dispels such a thought.

There was nothing in the circumstances leading up to the employment to indicate the case to be anything other than the usual one of aid rendered to a man who was in search of a position. The employment which Tausek had with the plaintiff was in its manufacturing department. Whether his purpose was the proper one of making use of the skill and experience he had gained, or the improper one of seeking a market in which to sell the processes of his former employer, he would naturally have sought a new employment which was like that of his old. This he did. It is, of course, possible that what the defendant did was done with a view to the concealment of his real purposes; but what he in fact did was, not to employ Tausek to manufacture invert sugars, but to engage him as a broker to sell. Tausek did send to the defendant the names and addresses of buyers of products who had been customers of the plaintiff, and did inform the defendant of how the plaintiff made the product which these customers had been receiving. These names and addresses were available to any one through the ordinary trade lists, and processes for making invert sugars had been known for years. It must, of course, be admitted that the plaintiff had acquired no proprietary right to the custom of any prospective purchasers of defendant's product, nor could it assert the right to prevent the defendant from making invert sugars, as he and others had made them for years.

The use of information unfairly secured, however, may justify a finding of unfair competition, and the purchase of stolen processes cannot be defended. When, therefore, the answer is made that an innocent way to the receipt of the information thus unfairly given was open, and that no use was made of processes thus improperly divulged, the mind does not rest satisfied with this answer until its truth is established. If the person receiving the information had solicited it, or been in any way an active party to its disclosure, the inference of its improper use would be hard to remove. There is just here a feature of this case which operates in favor of the defendant. There is nothing beyond the fact that Tausek disclosed information to implicate the defendant in either its disclosure or its use. There is nothing to indicate that the defendant invited it, and evidence that he somewhat testily repulsed Tausek's attempt to teach him the art. This, of course, as already intimated, might have been a pretense. We have

the fact, however, that the defendant was experienced and skilled in the business, and apparently, at least, that he so prided himself upon his knowledge and methods as to resent instruction, and no entirely satisfying reason to believe that he made any changes in his processes.

The practical proposition in consequence resolves itself into this: We are asked to restrain the defendant from selling sugars made as he has long been making them, and from selling to persons in the trade, because a former employé of the plaintiff disclosed its processes for making sugars, and as a broker sold defendant's sugars to former customers of the plaintiff. We say this is the substantial proposition, because, without a finding that the defendant was the guilty receiver and user of stolen processes, or had unfairly obtained or used information, the proposition so results. Counsel for plaintiff, of course, concede that without such a finding no restraining order could issue. The thought in mind is not in conflict with the distinction emphasized in Du Pont v. Masland, supra, that the important thing is the confidential relation and the command against the violation of its obligations. It must be further remembered that the employé is not a defendant in the present bill. Aside from the question of the justice of a decree against the defendant without a finding of wrongdoing by him, it would be impracticable to formulate a decree which would preserve to the plaintiff all its rights, without infringing upon the rights of the defendant and the rights, also, of those who are concerned with the trade. Counsel for plaintiff appreciate the difficulty of framing such a decree, but think a practical working decree may be framed, and have referred us to the special forms of decree entered in many different cases. The fact that a thing has been done often settles the question of whether it can be done, but one case of this general character may present difficulties which another does not. The defect which renders such a decree impracticable, if it be such, is that the enforcement of it brings up for decision the very same questions presented by the case before the decree was entered.

The bill of complaint is dismissed, with costs to defendant.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes